UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
THOMAS MURPHY,

                              Plaintiff,

            - against -

FIRST RELIANCE STANDARD LIFE
INSURANCE COMPANY,

                              Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**MEMORANDUM AND ORDER**
08-CV-3603 (DRH) (WDW)

**A P P E A R A N C E S :**

**For the Plaintiff:**
**Jaspan, Schlesinger Hoffman LLP**
300 Garden City Plaza
Garden City, New York 11530
By: Scott Fisher, Esq.

**For the Defendant:**
**Wilson, Elser, Moskowitz, Edelman & Dicker LLP**
The Curtis Center, Suite 1130 East
Independence Square West
Philadelphia, PA 19106
By: Joshua Bachrach, Esq.

**HURLEY, Senior District Judge:**

Plaintiff Thomas Murphy ("Plaintiff") brings this action pursuant to the Employee

Retirement Income Security Act ("ERISA"), as amended, 29 U.S.C. §§1132(a)(1)(B),

1132(g)(1), and 1140 seeking enforcement of cost of living adjustment ("COLA") benefits

allegedly owed by Defendant First Reliance Standard Life Insurance Company ("Defendant" or

"First Reliance") pursuant to a long-term disability insurance policy.  Plaintiff also seeks to

enforce a settlement agreement with Defendant and to recover damages for Defendant's alleged

interference with the exercise of Plaintiff's rights under ERISA.  Presently before the Court is

1

Defendant's motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). For the reasons stated below, Defendant's motion is granted in part and denied in part.

## BACKGROUND

### I.    Factual Background

The following facts are taken from the complaint and are presumed true for purposes of this motion.

Plaintiff commenced his employment with Tullett & Tokyo Forex, Inc. ("Tullet & Tokyo"), a securities brokerage corporation, as a United States government securities broker on July 5, 1993. (Compl. ¶ 7.) In July 1994, Tullet & Tokyo entered into a Group Long-Term Disability Insurance Program with First Reliance to provide disability insurance benefits for its employees, which was funded by an insurance policy issued by First Reliance (the "Policy"). (*Id.* ¶¶ 8-9.) Plaintiff was an eligible employee of Tullet & Tokyo and became a participant and beneficiary under the Policy on July 1, 1994. (*Id.* ¶ 9.)

On July 26, 1996, Plaintiff suffered a detached retina in his right eye and underwent surgery to repair the retina. (*Id.* ¶¶ 12-14.) On September 16, 1996, Plaintiff underwent an additional surgery to repair a retinal tear in his left eye. (*Id.* ¶ 16.) Following these two surgeries, Plaintiff experienced distorted vision, which interfered with his ability to perform his job. (*Id.* ¶¶ 17-19.) On October 15,1996, Plaintiff applied for long-term disability insurance benefits under the Policy. (*Id.* ¶ 20.) On January 30, 1997, First Reliance approved Plaintiff's application for long-term disability benefits from October 1996 through December 31, 1996 in the gross monthly benefit amount of $6,884.93, and later notified Plaintiff that it had

approved the continuation of his monthly disability benefits beyond December 31, 1996.  (*Id*. ¶¶ 21-22.)  For each month from January 31, 1997 through and including September 30, 2000, Defendant paid monthly disability income benefits to Plaintiff.  (*Id*. ¶ 23.)

Under the terms of the Policy, Plaintiff became eligible to receive an additional cost of living benefit as of January 1997.  (*Id*. ¶ 24.)  First Reliance paid cost of living benefits to Plaintiff under the Policy for the calendar years 1997, 1998, 1999, and through September 30, 2000.  (*Id*. ¶ 25.)

On March 30, 2000, First Reliance notified Plaintiff that his long-term disability benefits would be terminated effective September 30, 2000.  (*Id*. ¶ 27.)  At the time Defendant had terminated Plaintiff's disability benefits, Plaintiff was receiving a monthly benefit amount of $7,518.32, which included an additional cost of living benefit as provided by the Policy.  (*Id*. ¶ 29.)

## II.     Procedural and Further Factual Background (*Murphy I*)

On November 7, 2000, Plaintiff commenced an action in this Court[1] against First Reliance, captioned as *Murphy v. First Reliance Standard Life Ins. Co.*, Civil Action No. 00-CV-6647 (DRH) (WDW) (hereinafter "*Murphy I*" ), challenging Defendant's decision to terminate his long-term disability insurance benefits and seeking a declaratory judgment that he was entitled to the continued payment of monthly disability insurance benefits by First Reliance under the terms of the Policy.  (*Id*. ¶ 30.)   Following a bench trial, this Court issued a Memorandum & Order, dated May 20, 2004, finding that Plaintiff was totally disabled during the

---

[1]Prior to the commencement of the action, Plaintiff had exhausted all of the administrative remedies available to him under ERISA.  (*Id*. ¶ 28.)

relevant period and holding that First Reliance had erred by ceasing payment of long-term disability benefits under the Policy. (*Id*. ¶ 35, Ex. A.) The Court held that: (i) Plaintiff was entitled to long-term disability benefits from October 1, 2000 until the date of the May 2004 Order; (ii) Plaintiff was entitled to prospective long-term disability benefits until either his condition improved to the point that he could perform his past occupation or until the terms of the Policy otherwise called for the cessation of benefits; and (iii) prospective benefits were to be paid by First Reliance in accordance with the schedule set forth in the Policy. (*Id*. ¶¶ 36-37.) The calculation of the amount of damages, interest, fees and costs was then referred to Magistrate Judge William D. Wall. (*Id*., Ex. B.)

Thereafter, in November 2004, the parties entered into a Settlement Agreement and Release (the "Settlement Agreement") wherein the parties reached a resolution of the damages and attorney's fees claims[2] and First Reliance agreed to and did pay Plaintiff the accumulated unpaid past benefits from October 1, 2000 through November 30, 2004 (the "Accumulated Past Benefits"). (*Id*. ¶¶ 41-42, Exs. B, D.) The Accumulated Past Benefits amount included a cost of living benefit for that same time period. (*Id*. ¶ 43.) In addition, the Settlement Agreement provided for the reinstatement of Plaintiff's long-term disability benefits, effective December 1, 2004, to be calculated in accordance with the terms of the Policy. (*Id*. ¶ 45.) Defendant reinstated Plaintiff's monthly long-term disability benefits commencing

---

[2]On November 17, 2005, Magistrate Judge Wall issued a Report and Recommendation that no recommendation was being made in light of the representation that the matter had settled. (Report and Recommendation, dated November 17, 2005.) On December 3, 2004, this Court issued a Memorandum of Decision and Order adopting the Report and Recommendation in its entirety and directed the Clerk of the Court to close the case. (Memorandum of Decision and Order, dated December 3, 2004.) The case was thereafter closed.

4

December 1, 2004.  (*Id*. ¶ 46.)

Upon reinstatement in December 2004, First Reliance issued a monthly disability benefit payment to Plaintiff in the amount of $7,518.32.[3]  (*Id.* ¶ 89.)   In January 2005, Defendant again issued a monthly disability benefit payment to Plaintiff in the amount of $7,518.32.  (*Id.* ¶ 91.)   According to Plaintiff, these amounts did not include the proper cost of living benefit owed to him.[4]  (*Id.*)

In February 2005, First Reliance notified Plaintiff that the prior years' cost of living benefits had been erroneously calculated in that it had computed the prior years' cost of living benefits using a compound cost of living adjustment rather than using a simple cost of living adjustment.  (*Id*. ¶¶ 92-93.)  According to Defendant, the computation error began with the 1998 cost of living benefit payable to Plaintiff when First Reliance had erroneously added all prior cost of living benefit adjustments in calculating Plaintiff's cost of living benefit adjustment for the given year.  (*Id*. ¶¶ 94-95.)  Plaintiff asserts that contrary to Defendant's position, the cost of living benefit adjustments calculated by First Reliance for the years 1997 through and including November 30, 2004 were correct as computed.  (*Id*. ¶ 96.)

In February 2005, First Reliance adjusted the monthly disability payments paid to Plaintiff.  (*Id*. ¶ 99.)  From February 2005 through December 2005, Defendant made payments in the amount of $7,105.24 per month which Plaintiff maintains was improper and in breach of the

_____

[3]This amount represented the monthly disability benefit in effect at the time of the termination of benefits in September 2000.  (*Id.* ¶ 29.)

[4]Plaintiff asserts that for December 2004, the monthly disability benefit amount owed to Plaintiff with the COLA should have been at least $8,144.16, (*id.* ¶ 90), and for January 2005, the monthly disability benefit amount owed to with the COLA should have been at least $8,1364.48,  (*id.* ¶ 91).

Settlement Agreement.[5]  (*Id.* ¶¶ 99-100.)   For the calendar year 2006, First Reliance made monthly payments in the amount of $7,160.33, which Plaintiff again asserts was improper and in breach of the Settlement Agreement.[6]  (*Id.* ¶101.)

In January 2007, First Reliance terminated the payment of cost of living benefit adjustments, which Plaintiff claims he is owed under the terms of the Policy and the Settlement Agreement.  (*Id.* ¶¶ 108-09, 113.)  Thus, beginning in January 2007 and continuing to date, Defendant has made monthly disability benefit payments in the amount of $6,884.92 per month, which Plaintiff maintains is contrary to the terms of the Policy.[7]  (*Id.* ¶ 102.)

On May 21, 2007, Plaintiff moved for a pre-motion conference to discuss a post-settlement issue regarding the calculation of the COLA benefit owed to Plaintiff under the Policy.  (*Fisher Letter*, dated May 21, 2007, Docket Entry No. 45 in *Murphy I* action.)  Plaintiff maintained that under the terms of the parties' Settlement Agreement, Defendant had reimbursed Plaintiff for past disability benefits and reinstated his monthly benefits.  (*Id.*)  However, Plaintiff claimed that First Reliance had been improperly calculating the COLA benefits owed to him, which were part of his disability benefits.  (*Id.*)  Defendant opposed the application contending that the Court lacked subject matter jurisdiction over the dispute.  (*Bachrach Letter*, dated June 14, 2007, Docket Entry No. 47 in *Murphy I* action.)  In reply, Plaintiff asserted that the Court retained jurisdiction pursuant to the parties' Settlement Agreement.  (*Fisher Letter*, dated June

---

[5]Plaintiff asserts that the monthly disability benefit amount owed to Plaintiff during this period with the COLA should have been at least $8,364.48.  (*Id.* ¶ 100.)

[6]Plaintiff asserts that the monthly disability benefit amount owed to Plaintiff during this time period with the COLA should have been at least $8,639.88.  (*Id.* ¶ 101.)

[7]Plaintiff asserts that the monthly disability benefit amount owed to Plaintiff during this time period with the COLA should have been at least $8,639.88.  (*Id.* ¶ 102.)

20, 2007, Docket Entry No. 48 in *Murphy I* action.)   By Memorandum and Order, dated April 17, 2008, this Court held that it lacked jurisdiction over the instant dispute, but noted that Plaintiff may have recourse under Fed. R. Civ. P. 60(b)(6) or may file a separate action. (Memorandum and Order, dated April 17, 2008.)

### III.     Procedural Background of the Instant Action

On September 4, 2008, Plaintiff commenced the instant action under ERISA against First Reliance (i) challenging the methodology Defendant used to calculate COLA benefits owed to Plaintiff under the Policy from December 1, 2004 through December 31, 2006 which had resulted in a reduction of benefits, and seeking recovery of the COLA benefits due and owing to him for that time period, (ii) seeking the continuation of COLA benefits after January 1, 2007 and for as long as he remains eligible to receive monthly disability benefits under the Policy, (iii) seeking a declaratory judgment, and (iv) seeking compensatory and consequential damages for Defendant's alleged interference with his statutory ERISA rights.

Defendant now moves to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

### DISCUSSION

### I.     Motion to Dismiss: Legal Standards

Rule 8(a) provides that a pleading shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The Supreme Court has recently clarified the pleading standard applicable in evaluating a motion to dismiss under Rule 12(b)(6).

First, in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), the Court disavowed

the well-known statement in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 550 U.S. at 562. Instead, to survive a motion to dismiss under *Twombly*, a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id.* at 555 (citations and internal quotation marks omitted).

More recently, in *Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937 (2009), the Supreme Court provided further guidance, setting forth a two-pronged approach for courts deciding a motion to dismiss. First, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 1950. "While legal conclusions can provide the framework of a complaint, they must be supported by factual assumptions." *Id.* Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 555).

Second, "[w]hen there are well-pleaded factual allegations a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950. The Court defined plausibility as follows:

> A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* at 1949 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted).

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court generally may only consider facts stated in the complaint or "[d]ocuments that are attached to the complaint or incorporated in it by reference." *Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir. 2007); *Gillingham v. GEICO Direct*, 2008 WL 189671, at *2 (E.D.N.Y. Jan. 18, 2008) (same). A document not appended to the complaint may be considered if the document is "incorporated [in the complaint] by reference" or is a document "upon which [the complaint] *solely* relies and . . . is *integral to the complaint*." *Roth,* 489 F.3d at 509 (quoting *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir. 1991)) (emphasis in the original).

A district court may also "rely on matters of public record in deciding a motion to dismiss under [R]ule 12(b)(6)." *Parks v. Town of Greenburgh*, No. 07-5617, 2009 WL 2628516, at *2 (2d Cir. Aug. 27, 2009); *Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 75 (2d Cir. 1998) ("It is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6)"); *see Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004). Finally, in certain circumstances "when a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] . . . which is integral to the complaint, the defendant may produce [it] when attacking the complaint for its failure to state a claim, because plaintiff should not be

allowed to escape the consequences of its own failure." *Cortec Indus.,* 949 F.2d at 47.

## II.        *Additional Materials Submitted By Counsel*

The parties have presented to the Court additional materials relative to the merits of Plaintiff's claims, some of which are incorporated in the Complaint by reference, are documents upon which Plaintiff solely relied in bringing this action and are integral to the Complaint, or are matters of public record, and some of which are matters outside the pleadings.[8]

Defendant has submitted (1) a copy of First Reliance's group policy number LSC 21505 ("Exhibit B"); (2) a copy of the Memorandum & Order dated May 20, 2004 in the *Murphy I* action, which was attached to the Complaint ("Exhibit C"); and (3) a copy of the Settlement Agreement between the parties, which was attached to the Complaint ("Exhibit D"). (Bachrach Decl., dated March 11, 2009, Exs. B-D.)  Plaintiff has submitted an opposing declaration and exhibits annexed thereto, which include (1) an Affidavit of Leonard R. Freifelder, Ph.D. ("Freifelder Affidavit"); (2) a copy of the COLA calculation made by First

---

[8]The Second Circuit has made clear that "[w]hen matters outside the pleadings are presented in response to a 12(b)(6) motion, a district court must either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting materials." *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000) (internal quotation marks omitted); *see Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006) (same).  A district court, however, "is not obliged to convert a 12(b)(6) motion to one for summary judgment in every case in which a defendant seeks to rely on matters outside the complaint in support of a 12(b)(6) motion; it may, at its discretion, exclude the extraneous material and construe the motion as one under Rule 12(b)(6)." *United States v. International Longshoremen's Ass'n*, 518 F. Supp. 2d 422, 450-51 (E.D.N.Y. 2007) (citing *Friedl*, 210 F.3d at 83); *see Rice v. Kawasaki Heavy Indus., Ltd.*, 2008 WL 4646184, at *2-3 (E.D.N.Y. Oct. 17, 2008) (same); *Axelrod v. Flannery III*, 476 F. Supp. 2d 188, 202 (D. Conn. 2007) (same).  At this stage in the litigation, the Court declines to convert Defendants' Rule 12(b)(6) motion into one for summary judgment given that discovery has not been completed and an Answer has not been filed.

Reliance with respect to the COLA benefits payable to Plaintiff for the calendar years 1997 and 1998, which was part of the administrative record in *Murphy I* ("Exhibit A"); (2) a copy of the COLA calculation made by First Reliance with respect to the COLA benefits payable to Plaintiff for the calendar year1999, which was part of the administrative record in *Murphy I* ("Exhibit B"); (3) a copy of the COLA calculation made by First Reliance with respect to the COLA benefits payable to Plaintiff for the calendar year 2000, which was part of the administrative record in *Murphy I* ("Exhibit C"); and (4) a copy of a letter, dated March 28, 2005 from defense counsel to Plaintiff's counsel explaining the change in the calculation of COLA benefits ("Exhibit D").  (Fisher Decl., dated February 27, 2009, Exs. A- D; Freifelder Aff.)

For purposes of deciding the instant motion to dismiss, the Court finds that the following documents are documents that are attached to the Complaint or are incorporated by reference in the Complaint, are documents upon which Plaintiff solely relied in bringing this action and are integral to the Complaint, or are matters of public record:  Exhibits B (the Policy), C (the Memorandum & Order, dated May 20, 2004 in the *Murphy I* action), D (the Settlement Agreement) appended to the Declaration of Joshua Bachrach, dated March 11, 2009, and Exhibits A, B and C (the COLA calculations made by First Reliance with respect to Plaintiff's benefits for the calendar years 1997 and 1998, 1999 and 2000 which were part of the administrative record in *Murphy I*) appended to the Declaration of Scott B. Fisher, dated February 27, 2009.  *See, e.g., Chapman v. New York State Div. for Youth*, 546 F.3d 230, 234 (2d Cir. 2008) (holding "[o]ur review is limited to undisputed documents, such as a written contract attached to, or incorporated by reference in the complaint"); *Parks*, 2009 WL 2628516, at *2. Accordingly, in addition to the Complaint, these documents will be considered in deciding the

instant motion to dismiss.

For purposes of deciding this motion, the following documents are excluded form the Court's consideration of the motion: the Freifelder Affidavit[9] and Exhibit D (March 28, 2005 letter from defense counsel to Plaintiff's counsel) appended to the Declaration of Scott B. Fisher, dated February 27, 2009 as well as the Declaration in Opposition to Defendant's Motion to Dismiss the Complaint of Scott B. Fisher, dated February 27, 2009.  The Affidavit, Declaration and Exhibit are not incorporated in the complaint by reference, are not documents upon which the Plaintiff solely relied in bringing this action and are integral to the Complaint, and are not matters of public record.  *See Roth,* 489 F.3d at 509; *see also Cyril v. Neighborhood P'ship II Hous. Dev. Fund,* 124 Fed. Appx. 26, 27 (2d Cir. 2005) (noting that the consideration of an affidavit in ruling on a motion to dismiss would have been improper).

## III.    *Recovery of ERISA Plan Benefits*

Section 502(a) of ERISA, codified at 29 U.S.C. § 1132(a), allows a plan participant or beneficiary to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).  This section principally allows a plaintiff to assert a "contractual right under a benefit plan."  *Yoon v. Fordham Univ. Faculty & Administrative Retirement Plan*, 263 F.3d 196, 207 (2d Cir. 2001) (internal quotation

---

[9]Plaintiff requests in a footnote in his Memorandum in Opposition that to the extent that the Freifelder's Affidavit is deemed to be a matter outside the pleadings pursuant to Fed. R. Civ. P. 12(d), that the Court treat the instant motion as one for summary judgment pursuant to Fed. R. Civ. P. 56 and consider Plaintiff's opposition as a cross-motion for summary judgment pursuant to Fed. R. Civ. P. 56.  (Pl.'s Memorandum in Opp. to Def.'s Motion to Dismiss the Compl, at 9 n.4.)  As discussed *supra* the Court declines to do so.

marks and citation omitted).

"ERISA does not set out the applicable standard of review for actions challenging benefit eligibility determinations." *Fay v. Oxford Health Plan*, 287 F.3d 96, 103 (2d Cir. 2002) (internal quotation marks and citation omitted). The Supreme Court has held, however, that "[p]rinciples of trust law require courts to review a denial of [ERISA] plan benefits under a *de novo* standard unless the plan provides to the contrary." *Metropolitan Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2348 (2008) (internal quotation marks and citation omitted). Consistent with the Court's May 20, 2004 Memorandum & Order in the *Murphy I* action which involved the same ERISA plan at issue in the case at hand, the *de novo* standard of review is utilized to evaluate the cost of living benefits and monthly disability payments Plaintiff alleges he is owed under the long- term disability insurance policy issued to him by First Reliance.

Federal courts construe ERISA plans "according to federal common law." *Fay*, 287 F.3d at 104. In so doing, the court reviews "the Plan as a whole, giving terms their plain meanings." *Id.*; *see Critchlow v. First Unum Life Ins. Co.,* 378 F.3d 246, 256 (2d Cir. 2004) ("We interpret ERISA plans in an ordinary and popular sense as would a person of average intelligence and experience.") (internal quotation marks and citation omitted). "If there are ambiguities in the language of an insurance policy that is part of an ERISA plan, they are to be construed against the insurer." *Critchlow,* 378 F.3d at 256; *see Fay*, 287 F.3d at 104 (same). "Language is ambiguous when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire . . . agreement." *O'Neil v. Ret. Plan for Salaried Employees of RKO Gen. Inc.,* 37 F.3d 55, 59 (2d Cir. 1994) (internal quotation marks and citations omitted). "Whether contract language is ambiguous is a

question of law that is resolved by reference to the contract alone." *Id.* at 58-59 (internal quotation marks and citations omitted).

## IV.     Application

### (A)     Calculation of COLA Benefits Under the Policy[10]

At issue in the First Cause of Action is the proper calculation of the cost of living benefits owed to Plaintiff under the Policy issued to him by First Reliance. (Compl., ¶¶ 52-109.) Plaintiff maintains that the cost of living benefit adjustments calculated by First Reliance for the calendar years 1997 through and including November 30, 2004, were correct as computed and consistent with the terms of the Policy. From December 1, 2004[11] through December 31, 2006, however, Plaintiff asserts that First Reliance had improperly calculated the COLA benefits owed to him, which had resulted in a reduction of his monthly disability payments. (Pl.'s Mem. In Opp., at 7; Compl. ¶ 89.) It is these amounts which Plaintiff seeks to recover.

Defendant maintains that the methodology it used to compute COLA benefits from 1998 through December 2004 was erroneous. (Def.'s Mem. In Supp., at 5-6.) According to Defendant, commencing in the calendar year 1998, First Reliance inadvertently miscalculated

---

[10]The Settlement Agreement between the parties provides that the "reinstatement of Plaintiff's monthly disability benefits shall commence on December 1, 2004 and shall be calculated in accordance with the terms of the Policy." (Compl., Ex. B, at 5.) The Court will therefore evaluate Plaintiff's claims for disability benefits in accordance with the applicable language of the Policy.

[11]Plaintiff alleges in the Complaint that First Reliance began to improperly calculate the COLA benefits owed to him in his monthly disability benefit payments, beginning as of two different dates, to wit (1) December 2004 and (2) February 2005. (*Compare* Compl. ¶ 89 *with id.* ¶ 99.) For purposes of the instant motion, the earlier date will be assumed to be the proper date. Plaintiff is directed to amend the Complaint to reflect the accurate date.

the cost of living benefits owed to Plaintiff by including, rather than excluding, prior cost of living adjustments in the computation of benefits. Defendant maintains that this resulted in an overpayment of monthly disability benefits to Plaintiff for each calendar year during this time period. Although Defendant does not seek recovery of the monies it overpaid, it argues that pursuant to the terms of the Policy, First Reliance properly adjusted the monthly disability benefit payments paid to Plaintiff as of February 2005 and continuing through December 2006 by excluding prior cost of living adjustments. The Court agrees.

Plaintiff became eligible to receive a cost of living benefit effective January 1997. With respect to the payment of a cost of living benefit, the Policy provides:

> If the Consumer Price Index (CPI-W) published by the United States Department of Labor increases while an Insured is receiving Monthly Benefits from us, an additional benefit will be payable. *The Cost of Living Benefit will be payable during any of the first ten (10) years, following satisfaction of the Elimination Period, in which the Consumer Price Index increases.*
>
> Percentage increases in the Consumer Price index will be calculated by us each year. The increase will be based on a comparison of published annual Consumer Price Index statistics in October of each year. If the Consumer Price Index is changed or no longer published, the most comparable index (in our opinion) then published will be used for these purposes.
>
> This amount payable will be the lesser of the following, multiplied by the Monthly benefit, after any applicable reduction according to the section entitled Benefit Amount:
>
> (1) 4%; or
> (2) the most recently determined annual percentage increase in the Consumer Price Index ["CPI"];
>
> *excluding any prior Cost of Living Benefit payments. This benefit will be payable while the Insured continues to be entitled to Monthly Benefits.*

(Bachrach Decl., dated March 11, 2009, Ex. B at 13.0) (emphasis supplied.)

The Court finds the language in the Policy is unambiguous as it relates to calculating the cost of living benefits. The Policy explicitly directs Defendant to calculate the cost of living benefits by multiplying the monthly benefit by the lessor of 4% or the most recently determined annual percentage increase in the CPI, and excluding any prior cost of living benefit payments.

As a threshold matter, the monthly benefit amount must be assessed under the Policy. In pertinent part, the Policy provides:

> BENEFIT AMOUNT:          To figure the benefit amount payable:
>
> (1)     multiply an Insured's Covered Monthly Earnings by the benefit percentage(s), as shown on the Schedule of Benefits page;
> (2)     take the lesser of the amount:
>         (a) of step (1) above; or
>         (b) the Maximum Monthly Benefit, as shown on the Schedule of Benefits page; and
> (3)     subtract Other Income Benefits, as shown below, from step (2) above.
>
> We will pay at least the Minimum Monthly Benefit, if any, as shown on the Schedule of Benefits page.

(*Id*. at 7.0.)

Under the Schedule of Benefits, the Monthly Benefit "is an amount equal to 60% of Covered Monthly Earnings, payable in accordance with the section entitled Benefit Amount." (*Id*. at 1.0.)   According to Exhibit A which was part of the administrative record in *Murphy I*, the covered monthly earnings at the time Plaintiff's disability began was $11,474.87, and 60% of that covered amount is $6,884.93. (Fisher Decl., dated February 27, 2009, Ex. A.; Compl. ¶¶ 21-

22, 60.)

Once the monthly benefit amount has been determined, pursuant to the terms of the Policy, that amount ($6,884.93) is then multiplied by either 4% or the most current CPI with any prior cost of living benefits excluded.  For example, for the calendar year 1997, First Reliance determined the increase in CPI was 3% and multiplied that percentage increase by the monthly benefit amount of $6,884.93 to arrive at a cost of living benefit of $206.55.  (Compl. ¶ 63.)  Defendant then calculated the monthly disability amount payable to Plaintiff by adding $206.55 and $6,884.93 together and arriving at a monthly disability amount of $7,091.48 for the calendar year 1997.  (*Id.*)  For the calendar year 1998, First Reliance assessed the increase in the CPI to be 2.1% and multiplied that percentage increase by the monthly benefit amount of $6,884.93 and arrived at a cost of living benefit of $144.58.  (Compl. ¶ 68.)  However, Defendant then computed the monthly disability amount payable to Plaintiff by adding $144.58 and $6,884.93 *and* the prior cost of living benefit $206.55 together and arriving at a monthly disability amount of $7,236.06 per month for the calendar year 1998.  (*Id.*)

Except for the calendar year 1997, the amounts First Reliance paid to Plaintiff prior to December 2004 and calculated in the Settlement Agreement incorrectly included the prior cost of benefits in the calculation.  Plaintiff's position that (i) these prior cost of benefits should have been included when calculating the applicable benefit amount and (ii) Defendant's modification for computing the cost of living benefits owed Plaintiff after December 2004, which resulted in a reduction of benefits payable to Plaintiff was improper, is contrary to the plain meaning of the benefit provisions of the Policy.

Accordingly, Defendant's motion to dismiss Plaintiff's claims for the recovery of

cost of living benefits due and owing to him from December 1, 2004 through December 31, 2006 is granted.  In addition, Defendant's motion to dismiss Plaintiff's claim for a declaratory judgment declaring that the methodology used by First Reliance to calculate the cost of living benefits owed to Plaintiff prior to December 2004 was the correct and proper method to be used under the terms of the Policy is likewise granted.

### (B)    Continuation of COLA Benefits Under the Policy After January 2007

Plaintiff contends in the Second Cause of Action that he is entitled to the continuation of COLA benefits after January 2007.  (Compl., ¶¶ 110-13.)  Defendant disagrees arguing that pursuant to the terms of the Policy, the COLA benefit was only recoverable during the ten year period following Plaintiff's initial date of eligibility, or through January 2007. (Def.'s Mem. In Supp., at 7-8.)

The Court finds the language in the Policy is ambiguous as it relates to the continuation of COLA benefits.  As set forth above, the language in the Policy states, "The Cost of Living Benefit will be payable during any of the first ten (10) years, following satisfaction of the Elimination Period, in which the Consumer Price Index increases."  (Bachrach Decl., dated March 11, 2009, Ex. B at 13.0.)   A fair reading of this provision could support Defendant's position.  It is undisputed that Plaintiff became eligible and began to receive cost of living benefit payments in January 1997.  Thus, pursuant to the terms of the Policy, it could reasonably be construed that the COLA benefit was only recoverable through January 2007, ten years following the date of eligibility.

The Policy also provides, however, that the cost of living benefit "will be payable while the Insured continues to be entitled to Monthly Benefits."  (*Id.*)  This language is

18

reasonably susceptible to an interpretation that following the ten year period, while a calculation for annual COLA adjustments would no longer be made, the monthly benefit amount in effect as of the date of the ten-year threshold for COLA adjustments, including the COLA amount for that calendar year, would be payable while Plaintiff continues to be entitled to Monthly Benefits.

Although extrinsic evidence may later shed light on the meaning of the language of the Policy as it relates to the continuation of COLA benefits, this ambiguity is sufficient for the Court to conclude that Plaintiff has stated a cause of action for the denial of cost of living benefits continuing after January 2007 under ERISA.  Accordingly, Defendant's motion to dismiss that claim is denied.  In addition, Defendant's motion to dismiss Plaintiff's claim for a declaratory judgment declaring that he was entitled to a continued payment of a monthly disability benefits, including the cost of living benefit amount in effect at the end of the ten-year period, is likewise denied.

### *(C)        Retaliatory Interference With Statutory Rights Under ERISA*

In the Third Cause of Action, Plaintiff asserts that the decision by First Reliance to modify and change the methodology for computing his cost of living benefits, resulting in a reduction of benefits payable to Plaintiff, was directed specifically at Plaintiff in retaliation for having successfully exercised his rights under ERISA in *Murphy I* and for the purpose of intentionally interfering with and discriminating against Plaintiff's protected right to cost of living benefits under the Policy in violation of 29 U.S.C. § 1140.  (Compl., ¶¶ 114-22.)  Plaintiff seeks recovery of compensatory and consequential damages for Defendant's alleged wrongful interference with his statutory rights.  (*Id.*)

Section 510, as codified at 29 U.S.C.  § 1140, provides in relevant part:

It shall be unlawful for any person[12] to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provision of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may be entitled under the plan . . . [or] because he has given information or has testified or is about to testify

ERISA § 510; 29 U.S.C. § 1140. "The provision protects against (1) adverse action to punish the prior exercise of benefit rights; (2) adverse action to prevent the future vesting or enjoyment of benefit rights; and (3) adverse action to prevent or punish the giving of testimony in any proceeding relating to ERISA or a sister act." *Infantolino v. Joint Indus. Bd. of the Elect. Indus.*, No. 06-CV-0520 (JG), 2007 WL 879415, at * 7 (E.D.N.Y. Mar. 15, 2007) (quoting *Sandberg v. KPMG Peat Marwick, L.L.P.,* 111 F.3d 331, 334 (2d Cir. 1997)). It is the first of the above clauses that is relevant to this case.

In order for Plaintiff to prevail on a claim under Section 510, he must establish that First Reliance[13] interfered with a right "to which he is entitled under the provisions of the

_____

[12]For purposes of ERISA, a "person" is "an individual, partnership, joint venture, corporation, mutual company, joint-stock company, trust, estate, unincorporated organization, association, or employee organization." 29 U.S.C. § 1002(2)(B)(9).

[13]The Second Circuit has recognized that § 1140 "was designed primarily to prevent unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested pension rights." *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1111 (2d Cir. 1988) (quoting *West v. Butler*, 621 F.2d 240, 245 (6th Cir. 1980) (internal quotation marks omitted)); *see also Berube v. Great Atlantic & Pacific Tea Co.*, No. 08-1229-CV, 2009 WL 3316381, at *3 (2d Cir. Oct. 15, 2009) ("To succeed on a Section 510 claim, a plaintiff must demonstrate the employer specifically intended to interfere with benefits."). Here, however, First Reliance is the insurer of Plaintiff's benefits rather than his employer. The Second Circuit has not addressed whether § 1140 encompasses conduct outside the employment context. Thus, it is not clear that a cause of action is available to a former employee against a non-employer insurance company.

There is a split among the courts over whether the scope of § 1140 limits a cause of

employee benefit plan." 29 U.S.C. § 1140. In the instant case, the Court has concluded that Plaintiff had no right under the Policy (i) to the inclusion of prior cost of living benefits amounts in calculating the applicable monthly disability benefit amount or (ii) to the methodology First Reliance had previously used to compute his cost of living benefits from 1998 through November 2004. *See supra*. As such, there is no "protected right" with which Defendant could

---

action to acts that affect the employer-employee relationship. *See Swanson v. U.A. Local 13 Pension Plan,* 779 F. Supp.690, 701 (W.D.N.Y.), *aff'd* 953 F.2d 636 (2d Cir. 1991) (acknowledging "[t]here is some dispute among the courts over whether § 1140 liability is limited to employers"). *Compare Becker v. Mack Trucks, Inc.*, 281 F.3d 372, 382 (3d Cir. 2002) (holding that suits or discrimination under § 510 are "limited to actions affecting the employer-employee relationship"); *Byrd v. MacPapers, Inc.*, 961 F.2d 157, 161 (11th Cir. 1992) (holding non-employer insurer of plaintiffs' employee benefits plan was not liable under § 510); *Woolsey v. Marion Labs, Inc.,* 934 F.2d 1452, 1461 (10th Cir. 1991) (finding plaintiff had no actionable claim under § 510 when "Administrators' denial had not affected [plaintiff's] employment situation"); *Deeming v. American Standard, Inc.*, 905 F.2d 1124, 1127 (7th Cir. 1990) ("It is clear from the text of the statute . . . that § 510 was designed to protect the employment relationship against actions designed to interfere with, or discriminate against, the attainment of a pension right.") *with Heimann v. The National Elevator Indus. Pension Fund*, 187 F.3d 493, 508-09 (5th Cir. 1999) (finding § 510 protects former employee-participants from economic retaliation by their former unions and former employers for exercising ERISA rights) (overruled on other grounds); *Mattei v. Mattei*, 126 F.3d 794, 804 (6th Cir. 1997) (finding that "ERISA's basic purposes, plain words and legislative history, require a reading of §§ 510 and 502(a)(3) that provides all participants and beneficiaries, including former employees, former union members, and retirees with a remedy for economic retaliation because of participants' and beneficiaries' exercise of pension plan rights"); *Custer v. Pan American Life Ins. Co.*, 12 F.3d 410, 421(4th Cir. 1993) (declining to find that "Congress intended to limit those who could violate § 1140 to employers"); *Tingey v. Pixley-Richards West, Inc.*, 953 F.2d 1124, 1132 n.4 (9th Cir. 1992) (holding non-employer liability is permitted by § 510 where "an insurer coerces an employer to fire an employee").

In any event, assuming *arguendo* that Plaintiff can bring a § 1140 claim against a non-employer insurer, as discussed *infra*, because the Court finds that Defendant did not interfere with a right to which Plaintiff claimed he was entitled under the terms of the Policy, Defendant cannot be held liable under § 1140.

have interfered, and Plaintiff's Third Cause of Action fails.[14]  Accordingly, Defendant's motion to dismiss this claim is granted.

### CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss the complaint is GRANTED in part and DENIED in part.

**SO ORDERED.**

Dated:   Central Islip, New York
      December 15, 2009

/s/_____
Denis R. Hurley,
United States District Judge

---

[14]Inasmuch as Plaintiff fails to state a cause of action for First Reliance's alleged wrongful interference with Plaintiff's ERISA rights and retaliation against Plaintiff for the exercise of those rights, the Court need not reach Plaintiff's concomitant claim in the Third Cause of Action for compensatory and consequential damages related thereto.